## SUPREME COURT—IN BANCO.

HANUU *vs.* C. A. WILLIAMS *et als.*

IF ONE contract to labor for another for a specified term, and leave the service of the employer before the expiration of the term, without any cause attributable either to the employer or the act of Providence, he cannot recover his wages for the time he has actually labored.

But where damages were claimed for personal suffering in consequence of the non-fulfillment of the contract by the employer, upon a cause made, the Court awarded the value of the labor actually rendered to the defendants.

ALLEN, C. J.

This is an action of assumpsit on a contract for labor done and performed by the plaintiff for the defendants, and also upon a quantum meruit. There is also a special count for damages, viz : that the defendants did not furnish good, wholesome and sufficient food and water, and good and proper lodgings.

It appears that the plaintiff with others on the 18th of April last past, entered into a contract with the defendants to go to the Phœnix Islands, there to be employed in collecting and shipping guano, for a term not to exceed twelve months, or until the Phœnix Guano Company should wish his return home, provided that this should take place within twelve months, at $10 per month ; it was stipulated that he should have a free passage home after the expiration of the term of service.

It is in evidence that the plaintiff sailed from this port on the 19th of April last past for the Phœnix Islands, where he arrived after the usual passage, and he continued to labor for the term of six months, when he refused to continue his labor, and claimed that the defendants should give him a passage home at that time ; whereupon there was a difficulty between the plaintiff and defendant's agent at the island, and soon thereafter the plaintiff was furnished with a passage home.

It is contended, on the part of the defendants, that as the contract was for a period optional with them not exceeding twelve months, and as the plaintiff by his own showing had not complied with the terms of the contract in this particular, he was not entitled to recover.

The counsel for the plaintiff contends that the contract is not

mutual because the time for its expiration was not fixed at the same period for both parties. It may have required for the party in whose favor it was left to terminate the contract within the twelve months, to have given an additional consideration. We, see no objection to the terms of the contract. The parties have a right to make a contract for a given period, and there seems to be no reason why it should not be terminated at the option of either party, or of one of the parties. It is not illegal or inequitable that it should be so. Such contracts for hire are reasonable and convenient in an enterprise of this character, for should it prove unsuccessful, there might be no occasion for the full term of service as stipulated. The Court regard the stipulation as founded in practical wisdom, and should receive the sanction of the law. In the case of Down and Pinto (24 vol. English Law and Equity Reports, 503), it appears that the plaintiff was engaged by the defendants to superintend their smelting works, by letter, in which they say, " we shall require you to enter into an engagement for at least three years, at our option, at a salary of £250." The Court held that this was a contract to stay three years, and giving the defendants the option of terminating the service at the end of each year.

The principle is here clearly recognized, that one party to a contract may have the option to terminate it when the other has not.

There is a distinction in the American and English doctrine —in this, that in the latter country the parties may make the contract with reference to a general usage, which thereby becomes part of the contract. So that a laboring man, if turned away without notice and without fault, is entitled to one month's wages, although there is no agreement to that effect; and in the case of Down *vs.* Pinto, referred to, the Court adjudged judgment due for the second year, as the plaintiff had entered upon that year's service. In the case of Reab *vs.* Moore, 19 Johnson, 387, where the party had agreed to work for eight months for thirteen dollars per month, the Court regarded it so far an entire contract, that if the plaintiff left without cause, before the eight months expired, he could not recover for any part of the time, although he had worked more than a month, as there was no provision that he should be paid monthly. In

Davis vs. Maxwell, 12 Met., 286, the same principle is recog-
nized as in Reab vs. Moore, although the defendant had paid a
part during the continuance of the service. If one contract to
labor for another for a specified term, and leave the service of
the employer before the expiration of the term, without any
cause, attributable either to the employer or the act of Provi-
dence, he cannot recover his wages for the time he actually has
labored, this has been a doctrine most fully and elaborately
discussed and approved by the Courts which we regard as of
high authority. (Winn vs. Southgate, 17 Verm., 355; Davis vs.
Maxwell, 12 Met., 286; Hunt vs. Otis, Man. Co., 4 Met., 465;
Thayer vs. Wadsworth, 19 Pick., 349; Cuther vs. Powell, 6 T.
R., 320; Ellis vs. Hunter, 3 Taunton, 52; Ridgeway vs. Hun-
gerford Man. Co., 3 Ad. & E. 571; Turner vs. Robinson, Nal. 5
B. & Ad., 789.)

Upon our construction of the contract the whole term must
be devoted to the labor as specified before a payment for
wages can be legally demanded, unless exceptional payment be
specified, or unless the contract is terminated by the acts of
the employer. The defendant's promise to pay depends on a
condition precedent to be performed by the plaintiff; when
this is an *express agreement*, the claim must be settled upon its
terms, and not on a *quantum meruit*; neither party has a right
to abandon the terms of the agreement. Whoever fails to
fulfill those terms without a justification by law will subject
himself to liability. The weight of authorities for a long
period in countries where their Courts have been accustomed
to adjudicate on contracts of this character, sustains this prin-
ciple of construction; *stare decisis* is a principle of great im-
portance in preserving a consistency of judicial decision, and
therefore we deem it wise to sustain this view, although in the
case of Brittan vs. Turner (6 N. H., 481) the whole doctrine of
these authorities is resisted with great ability, and *indebitatus* as-
sumpsit on a *quantum meruit* is sustained. It is contended that
the rights of the employer are sufficiently guarded, because all
the damage he may have sustained from the breach of the
contract may be deducted from the amount of the claim against
him, or he may have an action to recover his damages for the
non-performance of his contract. This principle has been most

favorably regarded by some of the most eminent writers on the law of contracts. The same question, however, has arisen at a more recent period in other Courts, and been decided in conformity with the earlier decisions. In the case of Bealy vs. Olmstead (19 Pick., 528), which was an action of assumpsit for the balance of pay of five month's wages, where there was a special contract made by the plaintiff for six months' service, it was ruled that the entire performance was a condition precedent to the payment. Justice Morton says : " We have no hesitancy in adhering to our own decisions, supported as they are by principle and a long series of adjudications." (Payer vs. Mansfield, 2 Mass. R., 147 ; Phelps vs. Sheldon, 13 Pick., 50 ; Stark vs. Parker, 2 Pick., 267.) In a later case of Price vs. Dwight Man. Co. (2 Cush., 80) the same doctrine is distinctly held. The Court say that, " If the plaintiff agreed to labor for the defendants for one year, for instance, and left their service at the end of six months, without cause, she could not maintain an action for the services actually rendered, not exactly on the ground of forfeiture, but in consequence of the non-performance, on her part, of the special contract."

In Jennings vs. Camp (13 John., 94) the Court laid down this proposition, that a party who enters into a contract, and performs part of it, and then, without cause, and without the agreement, or fault of the other party, of his own volition abandons the performance, he cannot maintain an action on an implied assumpsit for the labor actually performed ; of course he cannot sue on the express contract. This doctrine was recognized in the case of Lantry vs. Parks (8 Cowen, 63), and subsequently in Sickles et als. vs. Pattison (14 Wendell, 257.)

But, it is contended by counsel for the plaintiff, that if the contract is obligatory in its terms, that the defendants have not fulfilled it on their part, inasmuch as they have not furnished the plaintiff sufficient good and wholesome food and water.

There is much evidence on this part of the case, and it is conflicting.. It seems to be conceded that the defendants, who are merchants of the highest respectability, furnished sufficient good and wholesome food and water, and, if there is any fault, it arose from the agents at the island in supplying the same to

the laborers. The law, as the Court have declared it, makes the rule stringent on the laboring man that he shall serve his entire term as per contract or forfeit the wages for the labor he has performed, besides incurring the liability for damages, if any harm arises, beyond the value of his services, and the Court will hold the rule equally stringent on the employers that they shall fulfill their part of the contract, a material part of which is, to furnish sufficient, good and wholesome food and water, and the question is, was the plaintiff supplied as he should have been? It will be borne in mind that he was employed on an island about three degrees north of the equator in shovelling guano into bags, in transporting them to the sea and in boating them to the vessel. The weather is hot and exhausting, and the labor is hard under the most favorable circumstances. It is in evidence that the work commenced at half-past five in the morning and continued until four P. M., and as some testified, till sundown. Now, what does a man require to sustain his health and strength, in labor of this character, in such a locality? He should be treated as to quantity and quality of food and water the same as if he was on this island, unless prevented by an accident against which a reasonable foresight could not guard, it became necessary to deal out at a restrictive allowance. But under no other circumstances can a restrictive allowance be justified. Labor in dust and dirt and under a hot sun is very exhausting, and the system must be supplied with food and water as nature demands. There can be no other rule for laboring men. In this case, it is very clear that there was, especially in the article of water, a restrictive allowance. They should have had all that was necessary for the preparation of their food, which to the Hawaiian is specially important, as well as for drink.

It is claimed further by the plaintiff that he should have damages for his sufferings on account of the non-fulfillment of the contract in this particular. The evidence does not sustain the allegation of that degree of hardship and privation, which has injuriously affected his health; if it were so, the Court would certainly award damages. But, in this case, the defendants had done their duty in furnishing ample supplies, and their agents at the island have not evinced a perverse disposition.

The Court regard it as an error in judgment rather than in a purpose to stint the man in his food and water, either to save the supplies in derogation of the right of the plaintiff or for the benefit of the defendants.  They may have been misled by their experience and practice on shipboard, but the rules at sea are not fully applicable to labor on the land.  We therefore do not regard the case as one which is entitled to damages, although of sufficient merit to terminate the contract and to entitle the plaintiff to the value of his labor actually rendered to the defendants.  The law can make no discrimination in the treatment of laboring men on the Phœnix Island or this island, so far as concerns the supply of wholesome food and water, except in case of loss of supplies at sea or by other casualty.  It is therefore the decision of the Court that the plaintiff recover for six months' wages at $10 per month, less $21 85 paid him, making a balance of $38 15, and costs of Court.

C. C. Harris and L. McCully for plaintiff.

A. B. Bates for defendants.